IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEON BATIE, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-1415-M |
| SUBWAY REAL ESTATE CORPORATION and TRAVIS BROWN, | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

The Motion to Dismiss under Fed. Rule Civ. P. 12(b)(1) and 12(b)(6), and Motion to Abate and to Compel Arbitration, filed by Subway Real Estate Corporation ("Subway"), are before the Court. Subway's Motions require the Court to determine four issues: (1) whether federal jurisdiction was properly invoked; (2) whether Plaintiff's failure to exhaust his state court remedies warrants dismissal of his declaratory judgment claims; (3) whether Plaintiff asserts a cognizable claim against Subway under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 501, *et seq.*, which guarantees certain protections for servicemen deployed abroad during eviction proceedings; and (4) whether Plaintiff's wrongful conversion claim should be dismissed under 12(b)(6). For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED** under Rule 12(b)(6), but denied under Rule 12(b)(1). Defendant's Motion to Abate is **DENIED** as moot. After concluding that diversity jurisdiction exists, the Court **DISMISSES** Plaintiff's declaratory judgment, SCRA, and wrongful conversion claims against Subway. Claims remain against Defendant Travis Brown.

## BACKGROUND

This case arises from a U.S. servicemember's eviction from two commercial spaces under lease during his deployment abroad. In the summer of 2002, Plaintiff Leon Batie began leasing from Defendant Subway two spaces on Grand and Gaston Avenues, respectively, out of which he operated Subway franchises. Shortly before his military deployment to Afghanistan in March, 2005, Plaintiff granted his brother, Chris Batie, a durable power of attorney, authorizing him to act on Plaintiff's behalf regarding "claims and litigation." After Chris Batie failed to make lease payments for the Grand Avenue restaurant, Subway allegedly terminated the lease in mid-February 2006, without notifying Plaintiff. Subway subsequently obtained a judgment from the Dallas County Justice of the Peace Court, evicting Plaintiff from the premises and imposing a statutory lien on all personal property therein. At that proceeding, Plaintiff alleges that Subway violated procedural safeguards required by the Servicemembers Civil Relief Act ("SCRA"), by failing to: (1) properly serve Plaintiff; (2) appoint an attorney for Plaintiff; (3) notify the court of Plaintiff's status as a U.S. serviceman or his deployment abroad; (4) apprise Plaintiff of the eviction action, in the manner specified by Plaintiff to a Subway representative, Mark Holubec, prior to his deployment; and (5) stay proceedings pending Plaintiff's return from Afghanistan. Subway repossessed the premises, including all personal property therein, in March, 2006.

Plaintiff did not make timely payments on the Gaston Avenue lease. As a result, Subway terminated that lease in mid-February 2006. Subway subsequently obtained a default judgment, based on Plaintiff's failure to appear, and was granted a writ of possession from the Dallas County Justice of the Peace Court in late March, 2006. The Justice of the Peace Court also imposed a statutory lien on all personal property in the restaurant. At the eviction proceeding,

Subway notified the Justice of the Peace Court of Plaintiff's status as a U.S. serviceman and his deployment abroad, and asked the court to appoint Chris Batie, a named co-Defendant in the proceeding, as Plaintiff's attorney-in-fact pursuant to the power of attorney. Plaintiff contends that this proceeding similarly violated his rights under SCRA, because Subway did not observe his specific instructions for serving process, and because the Court neither appointed legal counsel for Plaintiff nor stayed proceedings pending his return to the United States.

## RULE 12(b)(1)

Before addressing Subway's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must first determine whether it has jurisdiction over the instant suit. Plaintiff asserts federal question and diversity jurisdiction under 28 U.S.C. § 1331 and § 1332, respectively. The Court finds jurisdiction is proper under Section 1332 and, accordingly, does not reach the question of whether federal question jurisdiction exists.

Diversity jurisdiction exists under Section 1332 when the parties are citizens of different states, and the amount in controversy exceeds $75,000.[1] The party seeking to invoke federal diversity jurisdiction bears the burden of establishing that complete diversity exists, and that the jurisdictional amount is satisfied.[2]

Plaintiff pleads complete diversity among the parties in his Complaint, alleging that: (1) Plaintiff is domiciled in Illinois; (2) Defendant Subway is a Delaware corporation with its principal place of business in Connecticut; and (3) Defendant Brown is domiciled in Texas. Subway's Motion to Dismiss and subsequent Reply do not refute these allegations or otherwise contest Plaintiff's invocation of diversity jurisdiction, but rather solely contest federal question

---

[1] 28 U.S.C. § 1332; *see U.S. Fire Ins. Co. v. Villegas*, 242 F.3d 279, 284-85 (5th Cir. 2001) (concluding that punitive damages are relevant in determining whether the amount in controversy exceeds $75,000).
[2] *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998).

jurisdiction. Because subject matter jurisdiction limits this Court's power to hear suits, Defendant's apparent concession of diversity is not dispositive. Accordingly, the Court must make an independent determination that jurisdiction is proper before addressing Subway's remaining arguments for dismissal.

The Court accepts as true Plaintiff's uncontested allegations that he is domiciled in Illinois, that Subway is a Delaware corporation with its principal place of business in Connecticut, and that Brown is domiciled in Texas. Therefore, complete diversity exists.

The Court also finds that the amount in controversy exceeds $75,000. Plaintiff seeks an unspecified amount of compensatory damages for lost profits at his two Subway restaurants, attorney's fees, and costs, as well as punitive damages in excess of $5 million, based on Subway's alleged violation of the Servicemembers Civil Relief Act ("SCRA") and wrongful conversion of Plaintiff's personal property. An allegation in the Complaint of the requisite amount will confer jurisdiction upon the Court if the claim is made in good faith, unless it appears to a legal certainty that the claim cannot be satisfied.[3] Here, there is no allegation or evidence of bad faith by the Plaintiff. Further, the Court cannot conclude that Plaintiff's aggregate damages will not exceed $75,000. Finding that the jurisdictional amount is met, the Court concludes that diversity jurisdiction is proper.

## EXHAUSTION OF STATE REMEDIES & RULE 12(b)(6)

Satisfied that it has jurisdiction over the instant suit, the Court considers Subway's two remaining grounds for dismissal: Plaintiff's failure to exhaust his state remedies and Plaintiff's failure to state a claim upon which relief can be granted under Rule 12(b)(6). The Court

---

[3] *Lister v. Commissioners Court*, 566 F.2d 490, 492 (5th Cir. 1978).

considers the applicability of these defenses to Plaintiff's claims for declaratory judgment, SCRA, and wrongful conversion claims.

*Whether Plaintiff's Declaratory Judgment Claims Should be Dismissed*

Plaintiff seeks a declaratory judgment nullifying Orders entered by two Dallas County Justice of the Peace courts. These Orders resulted in Plaintiff's eviction from the Grand and Gaston Avenue properties. The specific declarations sought by Plaintiff are that: (1) the eviction Orders were invalid because Plaintiff was improperly served, and because the state court failed to observe procedural safeguards required by SCRA to protect servicemen deployed abroad during eviction proceedings; and (2) Subway violated SCRA by terminating Plaintiff's leases without first obtaining a court order.

Subway urges dismissal of the declaratory judgment claims on two grounds. First, Subway argues that 28 U.S.C. § 1257 confers exclusive jurisdiction on the United States Supreme Court to review appeals from final judgments of the highest court in any state. Second, Subway maintains that Plaintiff must exhaust his state remedies before challenging the eviction Orders in federal court.

Turning to Defendant's first contention, Subway incorrectly relies on Section 1257 for the law governing dismissal of Plaintiff's declaratory judgment claims. Section 1257 provides that "final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court." Section 1257 vests federal appellate jurisdiction over judgments by the highest state courts exclusively in the Supreme Court: such judgments may not be appealed to a federal district court. This jurisdictional limitation, however, is inapplicable to the procedural posture presented by this case. The instant suit did not arrive in this Court on appeal from the Texas Supreme Court. Rather, it is an original action for

declaratory relief brought under this Court's diversity jurisdiction. Because federal jurisdiction here lies in Section 1332, rather than in Section 1257, this Court has the power to adjudicate Plaintiff's declaratory judgment claims.[4] Thus, the Court rejects Defendant's first asserted ground for dismissal.

Subway next contends that this Court is in effect being asked to act as an appellate court, and that Plaintiff's failure to exhaust state court remedies precludes it from having claims decided in this forum. In support of this contention, Defendant cites *Costarelli v. Massachusetts*.[5] Defendant's citation to *Costarelli* and its reliance on Section 1257 fail for the same reason. *Costarelli*, like Section 1257, concerns federal jurisdiction over appeals from the highest state court judgments. In *Costarelli*, the question was whether the invocation of the United States Supreme Court's jurisdiction under Section 1257 was proper, where a criminal defendant filed a petition for a writ of certiorari with the Supreme Court after his conviction in the Municipal Court of the City of Boston, but prior to the determination of his appeal by the Superior Court for Suffolk County. The dispositive issue was whether the Municipal Court was the "highest court of a State in which a decision could be had" under Section 1257. Although *Costarelli* is not directly applicable here, since Section 1332, rather than Section 1257, is the asserted basis for federal jurisdiction, the import of *Costarelli* is helpful to the exhaustion issue. The Court, however, must look elsewhere for the applicable law on the exhaustion requirement.

This Court is guided by *Huffman v. Pursue*, where the Supreme Court confronted the exhaustion requirement in the context of a federal action seeking injunctive, rather than

---

[4] *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606 (1975) ("The issue of whether federal courts should be able to interfere with ongoing state proceedings is quite distinct and separate from the issue of whether litigants are entitled to subsequent federal review of state-court dispositions of federal questions.").
[5] 421 U.S. 193 (1975).

declaratory, relief.[6] There, the Supreme Court determined that abstention was mandatory where plaintiff sought a federal injunction of a final state order, without first exhausting his remedies by appealing the order. The Supreme Court held, "[W]e believe that a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court."[7] The Court reasoned that federal intervention in such a situation would interfere with state appellate procedure, undermine the finality of state court judgments, and reflect a lack of respect for state courts' ability to resolve federal questions:

> Federal post-trial intervention, in a fashion designed to annul the results of a state trial, also deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction. . . . In short, we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts. We therefore hold that *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies.[8]

*Huffman* also noted that federal intervention before plaintiff had exhausted his state court remedies not only violated principles of federalism but also wasted judicial resources. Federal intervention in such a situation is, "if anything[,] more highly duplicative, since an entire trial has already taken place."[9] In *Huffman*, the Supreme Court also rejected Plaintiff's related contention that exhaustion is unnecessary where appeal would be futile: "[W]e are of the opinion that the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are inauspicious."[10] The Supreme Court re-

---

[6] 420 U.S. at 592.
[7] *Huffman*, 420 U.S. at 608.
[8] *Id.* at 609.
[9] *Id.* at 608.
[10] *Id.* at 610.

affirmed *Huffman* in *Pennzoil Co. v. Texas*, holding that a party "cannot escape *Younger* abstention by failing to assert its state remedies in a timely manner."[11]

As in *Huffman*, Plaintiff here did not exhaust his state court remedies. Plaintiff did not allege, and the Court is unaware of, any law barring the interposition of his claims under federal law in either the original eviction proceedings or on appeal to the County Court at Law for a trial *de novo*.[12] Indeed, a state court is presumptively competent to determine federal law questions, including the SCRA violations alleged here. As Justice Powell stated in *Pennzoil*, "proper respect for the ability of state courts to resolve federal questions presented in state court litigation mandates that the federal court stay its hand."[13] Finally, Plaintiff does not dispute that a bill of review also presented a viable avenue for Plaintiff. Therefore, Plaintiff's failure to exhaust his state court remedies warrants dismissal.

In analyzing whether to dismiss Plaintiff's declaratory judgment claims, the Court is also guided by *Brillhart v. Excess Insurance Co.*[14] and *Wilton v. Seven Falls Co.*,[15] in which the Supreme Court articulated a more permissive abstention standard for suits brought under the federal Declaratory Judgment Act. The Supreme Court held in *Brillhart*, and reaffirmed in *Wilton*, that the Declaratory Judgment Act vested federal district courts with substantial discretion to decide or dismiss declaratory judgment claims, and that a federal court was "under no compulsion to exercise that jurisdiction" if the controversy might be, or might have been, settled more expeditiously in state court.[16]

> *Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when

---

[11] 481 U.S. 1, 16 n.16 (1987).
[12] *See* Tex.R. Civ. P. 749.
[13] 481 U.S. at 13.
[14] 316 U.S. 491, 494 (1942).
[15] 515 U.S. 277 (1995).
[16] *Id.* (quoting *Brillhart*, 316 U.S. at 494) (internal citations omitted).

> the suit otherwise satisfies subject matter jurisdictional prerequisites. . . . Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of *Colorado River*[17] and *Moses H. Cone*.[18] No subsequent case, in our view, has called into question the application of the *Brillhart* standard to the *Brillhart* facts. . . . Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.[19]

Although *Brillhart* and *Wilton* did not "delineate the outer boundaries of a federal district court's discretion," these decisions provided, and the Fifth Circuit has refined, a multi-factor test governing whether dismissal is appropriate.[20] In *St. Paul Ins. Co. v. Trejo*, the Fifth Circuit identified seven nonexclusive factors relevant to whether a district court should exercise its substantial discretion to dismiss a declaratory judgment action.[21] These factors are: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) possible inequities in allowing the plaintiff to gain precedence in time or to change forums; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being asked to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit is pending.[22] Careful balancing of each of these factors is required before a district court may dismiss a declaratory judgment claim.[23]

---

[17] *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976).
[18] *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1 (1983).
[19] *Wilton*, 515 U.S. at 286.
[20] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994); s*ee also Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 390 (5th Cir. 2001).
[21] 39 F.3d at 590-91.
[22] *Id.*
[23] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.,* 996 F.2d 774, 778 (5th Cir. 1993).

Analysis of the first *Trejo* factor—whether there is a pending state action in which all matters may be litigated—supports dismissal in this case. Although no action is still pending in state court, since Plaintiff failed timely to appeal the two eviction Orders, the comity, federalism, and judicial economy concerns underlying abstention under *Trejo* and *Younger* apply with particular force here, where Plaintiff seeks relief in federal court without first raising, or litigating to final state court judgment and appeal, the improper service and SCRA claims on appeal in state court.

> In the *Sherwin-Williams Company v. Holmes County*, the Fifth Circuit also emphasized:
>
> The presence of federal law questions, their relationship to state law questions, the ability of the federal court to resolve state law issues, and the ability of a state court to resolve the federal law issues are important to deciding whether a state or federal court should be the one to decide the issues raised in the federal court declaratory judgment action.[24]

Here, Plaintiff's declaratory judgment claims require resolution of two state, and three federal, questions. The state law questions are: (1) whether, under Texas law, Plaintiff was properly served; and if not, (2) whether improper service requires vacating the state court eviction Orders. The federal law questions are: (1) whether the method of service violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment; (2) whether SCRA safeguards were observed by Subway and the state court; and (3) if not, whether these violations invalidate the state courts' eviction Orders.

The Court knows of no reason why a Texas state court could not decide the federal questions presented by Plaintiff's declaratory judgment claims. First, Congress envisioned that state courts—not federal district courts—would decide claims involving SCRA's tenant

---

[24] 343 F.3d 383, 396 (5th Cir. 2003).

protections during eviction proceedings.[25] Second, SCRA's provisions do not require interpretation of other federal laws, and state courts are unlikely to encounter difficulties construing its provisions. Third, although SCRA has only been in effect for four years, its recent enactment does not compel federal adjudication of all cases implicating the statute's provisions.

A federal district court, conversely, is no better positioned than are state courts to adjudicate the state law questions raised by Plaintiff's claims, which require application of Texas law governing disputes between landlords and tenants. Hence, the first *Trejo* factor strongly supports dismissal of Plaintiff's declaratory judgment claim.

The second *Trejo* factor focuses on whether Plaintiff filed suit in anticipation of, or in reaction to, Subway's state suit. As the Ninth Circuit observed in *Dizol*, "federal courts should generally decline to hear reactive declaratory actions." Here, Subway filed its two state eviction actions in March, 2006. Subsequently, Plaintiff filed the instant suit seeking a declaratory judgment invalidating the state eviction Orders. Hence, under the second *Trejo* factor, Plaintiff's reactive suit supports dismissal of Plaintiff's declaratory judgment claims.

The third and fourth *Trejo* factors—whether Plaintiff engaged in forum shopping and whether permitting Plaintiff to litigate in a federal forum would result in inequity—counsel in favor of dismissal. Rather than appealing, or filing a bill of review challenging, the eviction Orders in a Texas court, Plaintiff filed the instant action in federal district court, demanding annulment of the state court Orders. However, overturning those Orders would be inequitable to Subway, the prevailing party in the state court proceedings. Hence, the third and fourth *Trejo* factors support dismissing Plaintiff's declaratory judgment claims.

---

[25] Congress made SCRA broadly applicable to civil proceedings: "APPLICABILITY TO PROCEEDINGS- This Act applies to any judicial or administrative proceeding commenced in any court or agency in any jurisdiction subject to this Act. This Act does not apply to criminal proceedings." § 102(b). The Court construes this to meant that jurisdiction is not exclusive in federal court.

The fifth factor—whether a federal court is a convenient forum for the parties and witnesses—is neutral. The Northern District of Texas and the Texas state courts sit in Dallas, Texas.

The sixth *Trejo* factor—overall judicial economy—supports dismissal. First, federal adjudication of an original action, which would involve discovery, pretrial motions, and potentially a jury trial, would consume more resources than state adjudication of a bill of review, a collateral attack on a judgment alleging discrete legal errors. Second, Texas law requires a plaintiff to file a bill of review in the court rendering the judgment.[26] The rendering court's familiarity with the case facilitates efficient disposition of the bill and conserves judicial resources. Third, the Justice of the Peace Court, which has jurisdiction over eviction proceedings, has greater experience interpreting and applying Texas law governing disputes between landlords and tenants than does this Court. The sixth *Trejo* factor thus favors dismissal.

The final *Trejo* factor strongly supports dismissal, as Plaintiff asks this Court to construe Orders "involving the same parties and entered by the court[s]" before which the earlier state suits were litigated.[27] Under the *Trejo* analysis, dismissal is particularly appropriate where the action in federal court seeks to invalidate, rather than merely to construe, a preceding state court decision. In contrast, in *Trejo*, the Court found that this factor supported retaining jurisdiction where Plaintiff's suit did not challenge, but merely sought to interpret, a settlement and state court judgment approving it.[28] Here, on the other hand, Plaintiff seeks declarations that the state Orders are "void and unenforceable."

---

[26] *Richards v. Comm'n for Lawyer Discipline*, 81 S.W.3d 506, 508 (Tex.App.-Houston [1st Dist.] 2002, no pet.).
[27] *Sherwin-Williams*, 343 F.3d at 388.
[28] *Trejo,* 39 F.3d at 591 n.8.

For the foregoing reasons, all but the fifth *Trejo* factor, which is neutral, support dismissal. Accordingly, Plaintiff's declaratory judgment claims against Subway are **DISMISSED**.

*Whether Plaintiff's SCRA Claim Should be Dismissed*

Plaintiff seeks compensatory and punitive damages for alleged violations of the SCRA. Defendant's Motion to Dismiss under Rule 12(b)(6) contends that SCRA does not authorize a private cause of action to enforce a violation of SCRA. Plaintiff's Response to the Motion to Dismiss apparently abandons SCRA as a basis for damages. Indeed, the Response fails to specify any provision in SCRA authorizing compensatory or punitive damages. Further, rather than focusing on monetary relief, Plaintiff's Response stresses nullification of the state eviction Orders as the proper remedy for SCRA violations. Finally, the Response, which does not clearly articulate the basis of Plaintiff's compensatory and punitive damages claims, apparently asserts wrongful conversion, rather than SCRA, as the sole basis for these claims. Therefore, Plaintiff appears to have abandoned his damage claims under SCRA.

Even assuming, *arguendo*, that Plantiff maintains SCRA as a basis for his punitive and compensatory damages claims, there is no provision in SCRA that authorizes a private cause of action to remedy violations of the statute. Accordingly, to the extent Plaintiff's claims for monetary relief arise under SCRA, those claims are **DISMISSED** under Rule 12(b)(6).

*Whether Plaintiff's Wrongful Conversion Claim Should be Dismissed*

Plaintiff's final claim is that Subway wrongfully converted Plaintiff's personal property. Subway maintains that its repossession pursuant to two state court Orders was lawful, mandating dismissal of Plaintiff's wrongful conversion claim under Rule 12(b)(6). The Court agrees. The two state court Orders imposed a statutory lien on all personal property in the Grand and Gaston

Avenue restaurants. There is no allegation that Subway's repossession or sale of Plaintiff's personal property violated the Orders. Because Subway's repossession of Plaintiff's personal property was undertaken pursuant to these Orders, Plaintiff's wrongful conversion claim fails as a matter of law and, accordingly, is **DISMISSED** under Rule 12(b)(6).

Because the instant Order disposes of all of Plaintiff's claims against Subway, Subway's Motion to Abate and to Compel Arbitration is **DISMISSED** as moot.

**SO ORDERED** this 15th day of February, 2008.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS